# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MATRIX IV, INC.,              )
                                     )
            Plaintiff,        )
                                     )  No. 06 C 1661
        v.                   )
                                     )  Judge George M. Marovich
                                   )
AMERICAN NATIONAL BANK    )
AND TRUST COMPANY OF CHICAGO  )
and GATEWAY PARK LLC,      )
                                   )
            Defendants.     )
                                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Matrix IV, Inc. ("Matrix") filed a ten-count complaint against defendants American National Bank and Trust of Chicago ("ANB") and Gateway Park LLC ("Gateway"). In the complaint, Matrix asserts five claims against each defendant. Each defendant moves to dismiss the five claims against it. In addition, Gateway has moved the Court to take judicial notice of certain pleadings in prior judicial proceedings. For the reasons outlined below, the Court grants in part defendant Gateway's motion to take judicial notice. The Court grants defendant ANB's motion to dismiss. The Court grants Gateway's motion to dismiss.

## I.    Background

The Court takes as true the allegations in plaintiff's 253-paragraph, 71-page complaint and summarizes the relevant allegations below.

Plaintiff Matrix is a custom molder. It's primary business is to engineer and manufacture injection-molded products. Defendant ANB is a bank owned by JPMorgan Chase & Co. Defendant Gateway was formed in 1998 by three individuals, Martha Williams ("Williams"),

Michael DePaul ("DePaul") and William Bailes ("Bailes"), none of whom is a defendant here. Gateway owns an industrial park. The story of how Matrix came to sue ANB and Gateway starts much earlier than the 1998 formation of Gateway.

In approximately 1994, Matrix began doing business with Stylemaster, Inc. ("Stylemaster"). Stylemaster was a company that distributed molded plastic products to retailers. Stylemaster's day-to-day operations were run by Williams. The plastic products Stylemaster sold were manufactured by, among others, plaintiff Matrix. The manufacturing process required the use of expensive plastic injection molds, which Stylemaster owned; but, the manufacturers (including Matrix) *possessed* Stylemaster's molds for use in the manufacturing process.

According to the complaint, Stylemaster was a terrible customer. It rarely, if ever, paid its bills; yet, Matrix continued to do business with Stylemaster for years. By June 1995, Matrix notified Stylemaster that it had obtained statutory and common-law liens upon the Stylemaster molds that Matrix possessed. Since that time, Matrix asserts that it has never waived or released the possessory liens and has never been fully paid. Matrix continued, however, to do business with Stylemaster.

In early 1997, Matrix informed Williams that it would no longer do business with Stylemaster. Williams, however, convinced Matrix to continue manufacturing its products by telling Matrix: (1) that Matrix would be paid for past orders only if it continued to produce future orders; (2) that if Matrix did not supply products, Stylemaster would be forced into bankruptcy; (3) that Matrix's liens (which Stylemaster said were superior to any liens perfected by UCC filings) upon the molds ensured payment; and (4) that Williams was looking for additional

-2-

investors for Stylemaster. Matrix agreed to continue manufacturing Stylemaster products in 1997.

Later in 1997, Williams brought in two new investors–DePaul and Bailes–for Stylemaster. As of that time, Williams owned 51% of the shares of Stylemaster, with the remaining 49% divided equally between DePaul and Bailes. Williams informed Matrix that Stylemaster would pay its debts to Matrix within 60 days. It is not clear from the complaint whether Matrix was paid.

In November 1997, Williams, DePaul and Bailes obtained from defendant ANB a line of credit for Stylemaster. The line of credit was secured by Stylemaster property at four locations, *not* including the Matrix location. Thus, the line of credit was not secured by the Stylemaster molds in Matrix's possession.

The three owners of Stylemaster created defendant Gateway in 1998. Gateway purchased an industrial park in Chicago and agreed to build a 600,000-square-foot industrial space for Stylemaster. When Stylemaster moved into its new facility (in or about May 2001), Matrix read news media reports stating that Stylemaster was moving its manufacturing in-house. When Matrix asked Williams about the issue, Williams told Matrix to disregard the media accounts. Stylemaster's move into the new Gateway space also increased Stylemaster's annual rent to approximately $5,000,000, an expense increase about which Williams, DePaul and Bailes never told Matrix.

Throughout 1998 and 1999, Matrix continued to do business with Stylemaster. Williams continued to represent that Stylemaster would pay its bills, and Matrix continued to provide Stylemaster with manufactured plastic products with only partial payment. Based on

Stylemaster's assurances that it would continue purchasing products from Matrix, Matrix agreed to expand its manufacturing facility and storage space and turned down substantial business from other potential purchasers.

Matrix alleges that, beginning in 2001, Williams, Bailes and DePaul engaged in two schemes to defraud Matrix and another manufacturer, Paramount Plastics. The first scheme Matrix calls the "2001 inventory scheme." In this scheme, Williams, Bailes and DePaul decided to bring Stylemaster's manufacturing in-house but did not want its outside manufacturers to know. As part of the scheme, Williams, Bailes and DePaul sought to "trick" Matrix and Paramount Plastics into producing a large quantity of Stylemaster products for Stylemaster to keep in its inventory while it was developing its own capacity to manufacture the products. Williams told Matrix that it was ordering goods from Matrix to fill bonafide orders placed with Stylemaster, when, in fact, no such orders existed. Stylemaster failed to pay for the products Matrix supplied. Instead of informing Matrix of its worsening financial condition, Williams sent Matrix a year-old financial statement, which misstated Stylemaster's financial condition. In January 2002, Stylemaster provided a list of inventory to Matrix, which showed that Stylemaster possessed $4,000,000 worth of Matrix-produced inventory.

The second scheme is a scheme Matrix calls the "2001 mold/lien scheme." Matrix alleges that Williams, DePaul and Bailes attempted to regain possession of the molds and to destroy the possessory liens Matrix had over some of Stylemaster's molds. Williams asked Matrix to release two molds so that Stylemaster could try out its new presses. Matrix handed over the two molds, and Stylemaster never returned them. Next, Stylemaster tried to regain possession of a 34-inch Base Contempra Mold, which was used for one of Stylemaster's most

popular products. Matrix refused. Thus, Williams, DePaul and Bailes attempted to destroy Matrix's lien another way. In November 2001, when Stylemaster and ANB were negotiating loan amendments, Williams told ANB that ANB would have first superior liens over all of Stylemaster's molds, including the molds possessed by Matrix.

Stylemaster filed for bankruptcy protection in March 2002. At that time, Stylemaster owed Matrix about $7,200,000. It owed Paramount Plastics approximately $1,200,000. Shortly after Stylemaster filed for bankruptcy protection, Williams and Bailes formed J.R. Plastics, LLC ("J.R. Plastics"), which purchased substantially all of Stylemaster's assets, allegedly for a fraction of their value.

## II.    Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Seventh Circuit has explained:

> Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of. . . .   Any district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain . . ." should stop and think: What rule of law *requires* a complaint to contain that allegation.

*Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). Certain allegations, however, must be stated with particularity. For example, Federal Rule of Civil Procedure 9(b) mandates that "all averments of fraud" be "stated with particularity." Fed.R.Civ.P. 9(b). Rule 9(b) "is of course applicable to allegations of fraud in a civil RICO complaint." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## III.   Discussion

### A.   Gateway's motion to take judicial notice

In considering a motion to dismiss, a court generally may not consider matters outside the pleadings without converting the motion to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). Courts can, however, take judicial notice of certain matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *General Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Still, courts "should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Id.* at 1081. Those rules provide that:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

*See* Fed. R. Evid. 201(b).

Gateway has asked the Court to take judicial notice of particular pleadings from Stylemaster's bankruptcy proceedings and from other lawsuits filed by Matrix. Gateway has supplied file-stamped pleadings from the Circuit Court of McHenry County, Illinois and the United States Bankruptcy Court for the Northern District of Illinois. Because the accuracy of the file-stamped pleadings cannot reasonably be questioned, the Court will take judicial notice of the

timing of and the fact that those pleadings were filed.  The Court will take judicial notice of the fact that parties made the statements they made in those pleadings, but the Court will not assume the truth of those statements or take judicial notice of the facts asserted in those pleadings.  *See Limestone Dev't Corp. v. Village of Lemont*, __ F. Supp. 2d ___, 2007 WL 273489 at n. 3 (N.D. Ill. Jan. 25, 2007).

Accordingly, Gateway's motion requesting the Court to take judicial notice of pleadings is granted in part.

### B.       ANB's motion to dismiss Counts I-V

Plaintiff brings Counts I-V of its complaint against defendant ANB.  In Count I, Matrix asserts a claim for common-law fraud.  In Counts II-V, Matrix asserts RICO claims.

### i.       Matrix's common-law fraud claim against ANB

In Count I, Matrix asserts against ANB a claim under Illinois law for fraudulent misrepresentation.

Federal Rule of Civil Procedure 9(b) mandates that "all averments of fraud" must be "stated with particularity."  Fed.R.Civ.P. 9(b).  The purpose of Rule 9(b)

> is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual.  In the typical commercial case there is a substantial interval between the filing of the complaint and the completion of enough pretrial discovery to enable the preparation and disposition of a motion by the defendant for summary judgment.  Throughout that period a claim of fraud will stand unrefuted placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation.  The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless.  It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims.

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-749

(7th Cir. 2005). The Rule requires the plaintiff to state the identity of the person who made the

misrepresentation, the time, place, and content of the misrepresentation, and the method by

which the misrepresentation was communicated to the plaintiff. *Vicom, Inc. v. Harbridge*

*Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Put another way, the Rule calls for the

plaintiff asserting fraud to allege the "who, what, when, where, and how: the first paragraph of

any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Matrix's fraudulent misrepresentation claim (Count I) contains fifty-eight paragraphs of

factual allegations and takes up twenty pages in Matrix's complaint. Yet Matrix does not

include in its lengthy averment a *single* misrepresentation alleged to have been made by ANB,

let alone the required particularities surrounding such a misrepresentation. Count I is dismissed

without prejudice.

### ii.     Matrix's RICO claims against ANB

In Counts II-V, Matrix asserts civil claims under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961, et. seq.

Congress passed RICO to "eradicate organized, long-term criminal activity." *Midwest*

*Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). The statute provides a civil

cause of action for violations of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c) ("Any person

injured in his business or property by reason of a violation of section 1962 of this chapter may

sue therefor in any appropriate United States district court and shall recover threefold the

damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . "). Despite

"widespread abuse" of civil RICO, RICO "has not federalized every state common-law cause of

action available to remedy business deals gone sour." *Midwest Grinding*, 976 F.2d at 1025. "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

### a. RICO–statute of limitations

ANB argues that defendant's RICO claims (Counts II-V) against it should be dismissed pursuant to the four-year statute of limitations period applicable to RICO claims. *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987). ANB argues that Matrix should have discovered its alleged injury no later than November 2001, when ANB filed a UCC-1 financing statement, an event ANB evidences by attaching a copy of the filed statement.

At this time, the Court cannot dismiss the RICO claims against ANB based on the statute of limitations. A statute of limitations is an affirmative defense, and the plaintiff need not plead around it. *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); Fed. R. Civ. P. 8(c). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *United States Gympsum*, 350 F.3d at 626. ANB does not argue that plaintiff has plead itself out of court. Rather, ANB attaches evidence in an attempt to establish the affirmative defense. The Court, however, cannot consider that evidence without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b), 10(c).

Thus, the Court will not dismiss Matrix's RICO claims against ANB on statute of limitations grounds.[1]

---

[1]Pursuant to Rule 56 of the Federal Rules of Civil Procedure, ANB is free, at any time, to file a motion for summary judgment on the statute of limitations issue. It need not wait until filing a motion for summary judgment on the merits, and a motion for summary judgment on statute of limitations grounds will not be deemed a waiver of ANB's right to file a subsequent motion for summary judgment on the merits.

### b. RICO–failure to state a claim

**§ 1962(c)**

In Count II, Matrix asserts against ANB a claim under RICO § 1962(c).  That section provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A "pattern of racketeering activity" is "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(f).  Racketeering activity, in turn, includes a number of indictable offenses, including the oft-cited mail and wire fraud.  18 U.S.C. § 1961(a).  To establish a pattern under RICO, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* activity."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989).  As the Supreme Court has explained:

> 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.  . . .  A party alleging a RICO violation may demonstrate continuity over a closed period by providing a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not

satisfy this requirement: Congress was concerned in RICO with long-term
criminal conduct.

*H.J. Inc.*, 492 U.S. at 241-242.  Conduct without the threat of continued activity is not

actionable.  *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006).  There, the Seventh Circuit

explained:

> Since, as the district court recognized, the amended complaint's allegations
> foreclosed any threat of continued criminal activity, the natural and commonsense
> result here is dismissal–the amended complaint cannot support the continuity
> element.  Restated, when, as here, a complaint explicitly presents a distinct and
> non-reoccurring scheme with a built-in termination point and provides no
> indication that the perpetrators have engaged or will engage in similar
> misconduct, the complaint does not sufficiently allege continuity for § 1962(c)
> purposes even if the purported scheme takes several years to unfold, involves a
> variety of criminal acts, and targets more than one victim.

*Gamboa*, 457 F.3d at 709.

In order to state a claim under § 1962(c), Matrix must allege that ANB (1) conducted or

participated in the conduct of (2) an enterprise (3) through a pattern of (4) racketeering activity.

*See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).  Matrix alleges that the

RICO enterprise is Stylemaster.  The Supreme Court has explained what it means to conduct or

participate in the conduct of an enterprise.  To be liable, one must "have some part in directing"

the affairs of the enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  The Seventh

Circuit has explained that "simply performing services for an enterprise, even with knowledge of

the enterprise's illicit nature, is not enough to subject an individual to RICO liability under §

1962(c); instead, the individual must have participated in the operation and management of the

enterprise itself."  *Goren*, 156 F.3d at 728.  Thus, for example, Mastercard does not conduct the

business of each merchant for whom it clears transactions.  *Jubelirer v. MasterCard Int'l, Inc.*,

68 F. Supp.2d 1049, 1053 (W.D. Wis. 1999) ("merely having a business relationship with and

performing services for such an enterprise, including financial, accounting and legal services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise.").

In Count II, Matrix alleges that ANB loaned money to Stylemaster. Matrix alleges that ANB then "directed" the affairs of Stylemaster by "reduc[ing] its credit exposure" to Stylemaster, by "expand[ing] the scope of its UCC based lien" and by encouraging Stylemaster to hire a consultant to consult on operational issues. Matrix further alleges that a condition in a loan agreement between ANB and Stylemaster granted ANB the right to encourage Stylemaster to hire a consultant. None of these activities are the sort of activities that constitute conducting a RICO enterprise. ANB's acts were acts in conducting its own business and in protecting its own interests in the money it loaned Stylemaster; they were not acts of directing Stylemaster.

Furthermore, even if Matrix's acts could be thought of as *conducting* an enterprise, Matrix fails to allege sufficiently that ANB conducted the enterprise *through a pattern of racketeering*. Here, Matrix alleges that ANB's acts were done through five letters it mailed between May 10, 2001 and October 10, 2001. Matrix must, however,

> explain how these mailings constitute the predicate act of mail fraud, and thus "racketeering activity." The elements of mail fraud under 18 U.S.C. § 1341 are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." A necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact.

*Williams v. Aztar Gaming Corp.*, 351 F.3d 294, 298-299 (7th Cir. 2003) (internal citations omitted). In *Aztar*, the Seventh Circuit affirmed the dismissal of a RICO claim where the mailings did not contain misrepresentations. Matrix has not alleged any facts suggesting that

ANB's mailings contained misrepresentations.  For example, ANB is alleged to have sent letters waiving Stylemaster's default of certain loan conditions.  Nowhere, however, does Matrix allege that the letters were fraudulent or contained misrepresentations.  Matrix does not allege, say, that ANB was *not* waiving the default of certain loan conditions.  Nor do the allegations suggest that the mailings furthered Stylemaster's alleged scheme to defraud Matrix.  If anything, the mailings would have tipped off Matrix to Stylemaster's debt.

Matrix has failed to state a claim against ANB under § 1962(c).  Count II is dismissed without prejudice.

### § 1962(a)

In Count III, Matrix asserts against ANB a claim under RICO § 1962(a).  That section provides, in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).  An "unlawful debt" is one that involves illegal gambling or the lending of money at usurious rates.  *See* 18 U.S.C. § 1961(6).  In this case, Matrix does not allege that ANB received income from illegal gambling or lending money at usurious rates.  Thus, in order to state a claim under § 1962(a), Matrix must allege that ANB (1) received income (2) derived from a pattern of racketeering and (3) used the income to acquire an interest in or to operate (4) an enterprise.  18 U.S.C. § 1962(a).  The basic purpose of § 1962(a) is "to prevent racketeers from

using their ill-gotten gains to operate, or purchase a controlling interest in, legitimate businesses." *Lugosch v. Congel*, 443 F. Supp.2d 254, 270 (N.D. N.Y. 2006).

Matrix has properly alleged only one of these elements. Matrix has alleged that ANB received income in the form of monthly loan repayments. Although the receipt of loan principal is not income, the interest portion of those repayments is income.

Matrix has failed, however, adequately to allege that this income was derived from a pattern of racketeering activity. First of all, the income was derived from agreements to loan money, not from a pattern of racketeering activity. Even were the income considered to be derived from the asserted pattern of racketeering, Matrix has failed to allege sufficiently a pattern of racketeering activity. Both asserted patterns–the inventory scheme and the mold scheme–lack the requisite continuity. The alleged inventory scheme involved efforts by Williams, Bailes and DePaul to convince two manufacturers–Matrix and Paramount Plastics–to supply a large inventory of goods to Stylemaster with promises of payments that would never be made. Williams, Bailes and DePaul are alleged to have planned to store and sell the goods while it got its own manufacturing capability up and running. The alleged scheme ran from early 2001 until March 2002, when Stylemaster filed for bankruptcy. In the alleged mold lien scheme, Williams, Bailes and DePaul sought to regain possession of its molds in Matrix's possession and to provide superior liens to ANB. Like the inventory scheme, the lien scheme ended in March 2002, when Stylemaster filed for bankruptcy. Because Stylemaster filed for bankruptcy and because plaintiff has not included any allegations that Stylemaster's successor has engaged in any similar scheme to convince manufacturers to develop more inventory or to quash liens on molds, the asserted pattern fails the continuity requirement.

Finally, Matrix fails to state a claim against ANB under § 1962(a) because Matrix fails to allege that ANB used the income to invest in an enterprise. Matrix alleges that ANB used the income to loan additional money to Stylemaster and/or Gateway, but this is insufficient. Entering an agreement to loan money is not the same as investing in an enterprise. A secured creditor is not an investor.

Count III is dismissed without prejudice.

**§ 1962(b)**

In Count IV, Matrix asserts against ANB a RICO claim under § 1962(b). That section provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce.

18 U.S.C. § 1962(b). To state a claim, Matrix must allege that ANB (1) acquired an interest (2) in an enterprise (3) through a pattern of racketeering activity. The purpose of § 1962(b) is to prohibit "the takeover of legitimate businesses through racketeering, typically extortion or loansharking." *In re VMS Securities Litigation*, 752 F. Supp. 1373, 1403 (N.D. Ill. 1990). Thus, defendant's racketeering must have caused or facilitated defendant's acquisition. *Id.*

Matrix has failed to state a claim. As the Court has already explained, Matrix has failed to allege that ANB acquired an interest in an enterprise. Agreeing to loan money to an enterprise is not acquiring an interest in that enterprise. Furthermore, as the Court has already explained, Matrix has failed to allege that ANB engaged in any predicate acts of mail fraud or other racketeering activity.

Matrix fails to state a claim against ANB under § 1962(b), and Count IV is dismissed without prejudice.

### § 1962(d)

In Count V, Matrix asserts against ANB a RICO claim under § 1962(d). That section provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The "touchstone" of liability under § 1962(c) is "an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). To state a claim under § 1962(d), Matrix "must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren*, 156 F.3d at 732.

Here, Matrix alleges that ANB and Gateway conspired to commit RICO offenses in violation of 18 U.S.C. §§ 1962(a)-(c). Because, as explained above, the conduct ANB is alleged to have conspired to commit does not itself violate RICO, Matrix has failed to state a claim for conspiracy under § 1962(d).

### C. Gateway's motion to dismiss Count VI-X

In Count VI, Matrix asserts against Gateway a claim for common-law fraudulent misrepresentation. In Counts VII-X, Matrix asserts against Gateway claims under RICO §§ 1962(a), (b), (c) and (d). Gateway moves to dismiss Matrix's claims against it.

### i.     RICO–statute of limitations

Gateway first argues that Matrix's RICO claims against it are barred by the four-year

statute of limitations applicable to claims brought under RICO.  As the Court has already noted,

the statute of limitations is an affirmative defense, and the plaintiff need not plead around it.

*United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); Fed. R. Civ. P.

8(c).  The Court can, however, dismiss a claim on statute of limitations grounds based on

judicially noticed facts.  *See Limestone Dev't*, __ F. Supp.2d __, 2007 WL 273489 (N.D. Ill. Jan.

25, 2007).

A cause of action under RICO accrues when the plaintiff knew or should have known

about the *injury* even if the plaintiff has not yet discovered the *pattern*.  *Rotella v. Wood*, 528

U.S. 549, 554-555 (2000).  "There must, of course, be a pattern of racketeering before the

plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff

discovers her injury."  *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992).  A new

RICO cause of action can accrue with each separate injury, but "[d]ifferent injuries flowing from

the same conduct are not usually actionable in separate lawsuits."  *McCool*, 972 F.2d at 1465 and

n. 10.

Gateway argues, based on pleadings from other court proceedings, that Matrix

discovered its injury by February 22, 2002, when it filed a state-court lawsuit against Stylemaster

and Williams.  The primary injury Matrix asserts in its claims against Gateway is the

approximately $7.2 million Stylemaster owed it for goods when Stylemaster filed for

bankruptcy.  On February 22, 2002, Matrix filed against Stylemaster and Williams breach of

contract claims for failure to pay invoices for the goods Matrix had supplied.  In that suit, Matrix

asserted that Stylemaster owed it more than $6.6 million as of February 2002. This is evidence that by February 2002, Matrix knew of at least some part of the injury it alleges in connection with its RICO claim and, thus, that Matrix's RICO claims may be time-barred. Matrix also claims as a RICO injury the $3 million it invested in expanding its manufacturing, an expansion Matrix alleges occurred in 1999 and 2000. Finally, Matrix claims as an injury the raw materials it purchased for and inventory it produced for Matrix. It seems (but is not entirely clear) that all of these alleged injuries flow from the same conduct, such that all of Matrix's RICO claims would be barred by the statute of limitations. Since it is conceivable that Matrix could plead a timely cause of action, the Court will not dismiss Matrix's RICO claims on statute of limitations grounds at this time.

### ii. RICO–failure to state a claim

**§ 1962(c)**

In Count VII, Matrix asserts that Gateway violated § 1962(c). As is explained above, that section makes it unlawful:

> to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Matrix fancies its claim to be like that of the plaintiff in *Sutliff Inc. v. Donovan Co., Inc.*, 727 F.2d 648 (7th Cir. 1984), *overruled on other grounds Hammes v. AAMCO Transmissions*, 33 F.3d 774, 782 (7th Cir. 1994). In *Sutliff*, the plaintiffs alleged that defendants convinced a mentally-infirm gas reseller to sell them below-cost gas, which they, in turn, sold for a profit. In order to convince the wholesaler to continue providing the gas reseller with gas, the defendants launched a scheme to create a false impression of solvency. *Sutliff*, 727 F.2d at 653. The

Seventh Circuit concluded that creating "a false impression of solvency in order to induce the extension of credit to an insolvent firm" was a form of fraud. *Id.* Thus, such fraud could support allegations of mail fraud and be part of a pattern of racketeering.

What separates the Matrix complaint from *Sutliff*, however, is that Matrix fails to allege that Gateway engaged in a pattern of racketeering. Matrix asserts mail fraud as the predicate acts of racketeering. Matrix even lists a number of items that were mailed: Stylemaster purchase orders, letters to Gateway from the City of Chicago, letters from suppliers to Gateway, and invoices mailed to Gateway. The problem with these alleged mailings is that *Gateway* did not mail them; it received them. Gateway could not have conducted another enterprise's affairs by *receiving* mail. Matrix alleges exactly *one* piece of mail that Gateway sent. Matrix alleges that on February 23, 1999, Bailes sent a letter on Gateway stationary on behalf of Gateway, in which letter he offered to provide funding to finance a project (Matrix does not say what project). Nowhere does Matrix include particularized allegations asserting either that the letter was itself fraudulent or that the letter furthered a fraud. Even if Matrix had alleged with particularity how that mailing constituted mail fraud, it failed to include a second predicate act and, thus, has failed to allege that Gateway engaged in a pattern of racketeering.[2]

Count VII is dismissed for failure to state a claim.

---

[2]Even if Matrix had alleged two predicate acts of mail fraud, Matrix still would have failed to state a claim because the asserted bust out scheme ended with Stylemaster's bankruptcy, such that Matrix has also failed to allege the necessary continuity. The Court notes that *Sutliff* was decided before the Supreme Court articulated the continuity requirement in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).

**§ 1962(a)**

In Count VIII, Matrix asserts that Gateway violated § 1962(a).  In order to state a claim under § 1962(a), Matrix must allege that ANB (1) received income (2) derived from a pattern of racketeering and (3) used the income to acquire an interest in or to operate (4) an enterprise.  18 U.S.C. § 1962(a).  Here, Matrix alleges that Gateway received rental income from Stylemaster and invested it, though the complaint fails to say in what the money was invested.

These allegations are insufficient to state a claim under § 1962(a).  First, Matrix has failed to allege that the rental income was derived from a pattern of racketeering activity, because Matrix has failed to allege a pattern of racketeering.  As the Court explained with respect to Count VII, Gateway is not alleged to have itself engaged in a pattern of racketeering activity.  If Matrix is suggesting that the income derived from a pattern of racketeering engaged in by Stylemaster, the Court has already concluded that Matrix failed to allege adequately such a pattern because the asserted patterns lacked both continuity and particularized allegations of mail fraud.  Finally, Matrix fails to allege that Gateway invested the rental income in an *enterprise*.

Accordingly, the Court dismisses without prejudice Count VIII.

**§ 1962(b)**

In Count IX, Matrix asserts that Gateway violated § 1962(b).  That section makes it unlawful for a "person through a pattern of racketeering activity" to acquire or maintain "an interest in or control of any enterprise."  18 U.S.C. § 1962(b).  Thus, to state a claim, Matrix must allege that Gateway used a pattern of racketeering activity to obtain an interest in an enterprise.

Matrix has failed to state a claim under § 1962(b) for the same reasons it failed to state a claim against Gateway under § 1962(c): Matrix has failed to allege that Gateway engaged in a pattern of racketeering. Matrix alleges only one mailing and even that mailing is not adequately alleged as mail fraud.

Count IX is dismissed without prejudice.

**§ 1962(d)**

Finally, in Count X, Matrix asserts that Gateway violated 18 U.S.C. § 1962(d) by conspiring with ANB, William, Bailes and DePaul to violate RICO. The problem with Count X is that the conduct the parties are alleged to have conspired to engage in does not constitute a violation of RICO. Accordingly, the Court dismisses without prejudice Count X.

### iii.    Matrix's state-law fraud claim

Finally, in Count VI, Matrix asserts against Gateway a state-law claim for fraudulent misrepresentation. A district court may "decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Seventh Circuit has explained, a district court's decision to relinquish supplemental jurisdiction is "the norm, not the exception." *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (quoting *Fisher v. Information Resources, Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)). Accordingly, Count VI is dismissed without prejudice.

## IV.    <u>Conclusion</u>

For the reasons set forth above, the Court grants in part Gateway's motion to take judicial notice. The Court grants ANB's motion to dismiss. The Court grants Gateway's motion to

dismiss. Plaintiff's complaint is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint on or before April 17, 2007.

ENTER:

George M. Marovich
United States District Judge

DATED: March 15, 2007